IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Angela D. Douglas,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | C.A. No._____ |
| v. | § | |
| | § | |
| **Madera Residential Ltd. and** | § | |
| **Verano Apartment Homes,** | § | |
| | § | |
| Defendants. | § | **(JURY TRIAL DEMANDED)** |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Plaintiff, Angela D. Douglas, filing her Original Complaint complaining of Defendants, Madera Residential Ltd. and Verano Apartment Homes, and in support thereof would show as follows:

### I.
### JURISDICTION, PARTIES AND VENUE

1. This Court has jurisdiction over the causes of action alleged by Plaintiff pursuant to (i) 28 U.S.C. §1331, (ii) 42 U.S.C. §1981, (iii) Title VII of the Civil Rights Act of 1964, as amended, and (iv) the Americans With Disabilities Act Amendments Act of 2008, as amended ("ADAAA").

2. Angela D. Douglas resides in Houston, Texas. Plaintiff is an African-American and is protected by 42 U.S.C. §1981 and Title VII. Plaintiff suffers from anxiety and is protected

by ADAAA. Plaintiff was at all relevant times an employee within the meaning of the applicable statutes.

3. Madera Residential Ltd. and Verano Apartment Homes (collectively "Madera Residential" or "Defendant") operate in Texas.  Defendant was at all times Plaintiff's employer within the meaning of the aforementioned applicable statutes. Its registered agent is Keith C. Thompson, 11003 Quaker Avenue, Lubbock, Texas 79424.

4. Madera employed more than fifteen (15) regular employees.

5. The employment practices alleged to be unlawful herein were committed within the Southern District of Texas, Houston Division.  Venue is appropriate in this Court.

**VICARIOUS LIABILITY--RESPONDEAT SUPERIOR**

6. Whenever in this complaint it is alleged that the Defendant Madera Residential did any act or thing, it is meant that the Defendant Madera Residential supervisors, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendant Madera Residential or was done in the normal and routine course and scope of employment of Defendant Madera Residential's supervisors, agents, servants, employees, or representatives.

7. The acts of management were performed while in the employment of Defendant Madera Residential, to further Defendant Madera Residential's business including that of Verano Apartment Homes, to accomplish the objective for which said managers were hired, and within the course and scope of that employment or within the authority delegated to said employees.

**II.
EXHAUSTION OF ADMINISTRATIVE REMEDIES**

8. Plaintiff, Angela D. Douglas, filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission on or about September 4, 2019. *See Exhibit A*. In that Charge, No. 460-2019-05575, and any amendments and/or attachments thereto, Plaintiff Douglas asserted that Defendant discriminated against her because of her race and disability and retaliated against her after engaging in protected activity concerning her race. *See Exhibit B*.

9. Therefore, Plaintiff was forced to file this suit in order to protect her employment rights. Plaintiff has exhausted her administrative remedies and files this suit within the statutory limitations period.

## III.
## FACTUAL BACKGROUND

10. On or about November 7, 2018, Angela Douglas (African American) began employment with Madera Residential. She worked as a leasing consultant at the Verano Apartment Homes located at S. Dairy Ashford Street in Houston, Texas.

11. Ms. Douglas assumed the role with an optimistic spirit and determination to do well for herself and her young daughter. Her daughter was born in June of 2018.

12. Defendant hired and retained Francis Leon (Hispanic) as Ms. Douglas' supervisor.

13. Very early on, Manager Leon began making offensive remarks about Ms. Douglas' hair. Ms. Douglas wore her hair in a natural, unrelaxed style. Frequently, Manager Leon verbalized her displeasure with Ms. Douglas' hair not being "straight." Manager Leon often threatened to bring a flat iron to Defendant's workplace and straighten Ms. Douglas' hair.

14. Manager Leon also touched Ms. Douglas' hair on several occasions without permission or consent, as she made her discontent with Ms. Douglas' natural hair known. Ms. Douglas was offended.

15. Manager Leon's comments were so frequent that Ms. Douglas felt forced to get her hair relaxed. It was not her choice, but Ms. Douglas did so to please her supervisor knowing that Manager Leon held her job, income and residence in her hands.

16. In addition, Manager Leon constantly used the word "nigga" in the workplace. She frequently referred to Ms. Douglas as "my nigga." Manager Leon also described incidents with her significant other and use that phrase. Ms. Douglas asked Manager Leon to please stop using that phrase. In response, Manager Leon would become angry and demand that Ms. Douglas respect her position bestowed to her by Defendant as manager. Manager Douglas would tell Ms. Douglas to quit. Ms. Douglas could not afford to quit.

17. Manager Leon was also very curt with Ms. Douglas even when Ms. Douglas was a new employee. Yet, with the Hispanic employees, Manager Leon was more patient, tolerant and engaging.

18. Ms. Douglas was essentially left to learn the job on her own.

19. Notwithstanding, Ms. Douglas went the extra mile to provide superb customer service for Madera Residential and Verano Apartment Homes. Ms. Douglas took great pride in her work performance, but Manager Leon worked to sabotage her efforts. It seemed like Manager Leon did not want Ms. Douglas to succeed.

20. When Ms. Douglas asked to be respected, Manager Leon responded that she [Manager Leon] was the manager and that what she [Manager Leon] said, went. Manager Leon

told Ms. Douglas to quit or called her "crazy." Manager Leon stated she would perform spiritual witchcraft on Ms. Douglas by rubbing an egg over her. Manager Leon even hung up on work-related phone calls by Ms. Douglas to her.

21. One of the benefits of employment Defendant offered at the time of Ms. Douglas' employment is that after 90 days the employee is permitted to live on the premises at a discount.

22. Ms. Douglas noticed that her lease terms were different from her Hispanic peers.

23. Aracelis Rivera signed her lease in March of 2019.

24. Marleny Castro signed her lease in February of 2017.

25. In Ms. Douglas' lease, she had to vacate her apartment unit within 72 hours of her termination.

26. Ms. Rivera and Ms. Castro were not ordered to move off the property after termination from the company.

27. Ms. Douglas also observed that Manager Leon engaged in underhanded deeds to get residents to move in the Verano Apartment Homes. Some of these residents were unqualified based on their criminal histories and the like. When Ms. Douglas questioned Manager Leon or objected, Manager Leon became furious with Ms. Douglas.

28. Assistant Manager Ollie Grisby's employment ended at some point. She was subjected to some of the same conduct by Manager Leon.

29. Manager Leon did not consider Ms. Douglas for the Assistant Manager position even though Ms. Douglas was an assistant manager before working at Defendant. In fact, Manager Leon very candidly said after Ms. Grisby's separation that from now on, she would stick to and work with her kind.

30. Thereafter, a Hispanic was hired – Yvette Della Santos.

31. One day, Ms. Douglas told Manager Leon that she was going to report her racially offensive conduct to upper management.

32. On or about July 29, 2019, Ms. Douglas made an outcry to Director of Human Resources and Legal Affairs Brigitte Yeager (non African American) about the unethical practices mentioned above.

33. On or about July 30, 2019 around 11:37 a.m., Ms. Douglas informed Ms. Yeager that she felt threatened and unsafe at Defendant's workplace.

34. On or about July 30, 2019, Ms. Douglas made another complaint. This time, she complained to Supervisor Cody Boggs (non African American). Supervisor Boggs traveled from Lubbock, Texas to the Houston office where Ms. Douglas worked.

35. Ms. Douglas specifically told Supervisor Boggs about Manager Leon's hair comments, the "my nigga" comments, the comment about her wanting to stick to her own kind in terms of hiring, and everything else.

36. Ms. Douglas very specifically told Supervisor Boggs that she thought she was being picked on because she is African American.

37. Supervisor Boggs also kept trying to get Ms. Douglas to say that Manager Leon's poor treatment was not motivated by Ms. Douglas' race but because things were weird. Ms. Douglas would not accept such a characterization and that seemed to anger Supervisor Boggs. Supervisor Boggs said, "We've hired *others* before so this is not discrimination."

38. When Ms. Douglas referred to herself as "African American," it greatly offend Supervisor Boggs. Supervisor Boggs insisted that Ms. Douglas was not "African American" but

was "American." Supervisor Boggs also questioned whether Ms. Douglas knew the definition of "hostile work environment." Moreover, Supervisor Boggs gave very little attention to the merits of Ms. Douglas' claims. Ms. Douglas became overtly distraught. Supervisor Boggs told her to take the rest of the workday off. She added that "You're no longer the face of Madera."

39. Ms. Douglas was so bothered by her encounter with Supervisor Boggs that she emailed her on July 30, 2019 at about 4:58 p.m. outlining those concerns.

40. Supervisor Boggs then called Ms. Douglas. She told Ms. Douglas that she was being issued a corrective action for being late, disorganized and insubordinate. Ms. Douglas asked for a copy of the write-up and never received it.

41. Supervisor Boggs then told that Ms. Douglas that she was being transferred to another property, The Element Apartments.

42. Ms. Douglas suffers from anxiety especially when traveling on freeways and long distances. It developed after the death of her dear friend from a freeway incident. Her medical condition was known especially to Manager Leon, who would often make jokes about Ms. Douglas' condition and fear of freeways. Supervisor Cody Boggs was also aware of such.

43. Ms. Douglas sought medical treatment for workplace anxiety on or about August 2, 2019 and was taken off work for a period of time.

44. Ms. Douglas requested to return back to the Verano Apartment Homes as an accommodation to her anxiety. Defendant denied such a request.

45. She was then transferred to Somerset Apartments effective September 6, 2019 while on medical leave.

46. Ms. Douglas was terminated on or about September 4, 2019.

47.     The effect of the practices complained of herein have been to deprive Ms. Douglas of equal employment opportunities and otherwise adversely affect her status as an employee because of her race and disability and opposition to discrimination and harassment.

## IV.
## CAUSES OF ACTION

**A.     RACE DISCRIMINATION & HARASSMENT PURSUANT TO 42 U.S.C. §1981 And TITLE VII**

48.     Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

49.     Defendant, through its agents, supervisors, or employees violated Plaintiff's civil rights in violation of 42 U.S.C. §1981 and Title VII, by intentionally interfering with Plaintiff's workplace experience, work performance and advancement because of her race.

50.     This intentional interference consisted of discrimination and harassment of a continuous nature.

51.     Defendant, through its agents, supervisors, or employees discriminated and harassed Plaintiff, which led to the loss and impairment in whole or part, of the wages, benefits, privileges, and terms and conditions of Plaintiff's employment.

52.     The above-described acts on Defendant's part caused Plaintiff's substantial injury and damage.

**B.     DISABILITY DISCRIMINATION PURSUANT TO ADAAA**

53.     Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

54.     Plaintiff is a qualified individual with a mental disability e.g., anxiety.

55. It limits her in one or more major life activities including but not limited to her breathing, heart rate, and ability to cope, among other things.

56. Plaintiff has a history and record of having a disability.

57. A record of a disability may be any form of record, such as a hospital record, medical record or any other document that indicates the plaintiff once had a limiting impairment.

58. Plaintiff made a request internally to Defendant's staff seeking reasonable accommodations for her disability. As well, Plaintiff's supervisor mocked her because of it.

59. Plaintiff has also been regarded as having a disability.

60. Based on the aforementioned, Plaintiff is disabled within the meaning of ADAAA.

61. Defendant entertained misperceptions regarding Plaintiff that proved detrimental to her employment.

62. Defendant, through its agents, supervisors, or employees violated Plaintiff's civil rights in violation of the ADAAA by intentionally interfering with Plaintiff's performance of her employment because of her actual medical condition, history and record of disability and the perception of same including refusing to reasonably accommodate her and refusing to engage in interactive dialogue concerning her limitations, among other things.

63. This intentional interference consisted of discrimination of a continuous nature.

64. Defendant, through its agents, supervisors, or employees discriminated against Plaintiff which led to the loss and impairment in whole or part, of the wages, benefits, privileges, and terms and conditions of Plaintiff's employment.

65. The above-described acts on Defendant's part caused Plaintiff substantial injury and damage.

C. **RETALIATION PURSUANT TO 42 U.S.C. §1981 And TITLE VII**

66. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above and incorporate the same by reference as though fully set forth herein.

67. After complaining to management of racially-motivated maltreatment, Plaintiff was subsequently and repeatedly harangued, denied promotion opportunities, bullied, disciplined, transferred and terminated, among other things listed above.

68. As herein alleged, Defendant illegally retaliated against Plaintiff because she opposed discrimination and harassment and complained of same. Defendant had no legitimate business reasons for any of such acts. Each act of retaliation is in violation of Title VII and 42 U.S.C. §1981's anti-retaliation provision.

69. As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation against her, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

70. The above-described acts on Defendant's part were undertaken in violation of Title VII and 42 U.S.C. §1981 and proximately caused Plaintiff substantial injuries and damages.

## V.
## JURY DEMAND

71. Plaintiff's request that this action be heard before a jury.

## VI.
## DAMAGES

72.     Defendant's conduct constitutes violations of statutory and/or common law. Such unlawful conduct seriously affects Plaintiff in her occupation, trade and business. Because of Defendant's unlawful conduct, Plaintiff has suffered, suffers, and will continue to suffer humiliation, mental anxiety and stress, and other damages. Plaintiff has suffered direct injury as a proximate result of the unlawful discriminatory practices, policies, and procedures of Defendant. Accordingly, Plaintiff seeks all general, special, incidental, compensatory, punitive and consequential damages in an amount to be proved at trial.

73.     Because of Defendant's unlawful and tortious conduct, it has been necessary for Plaintiff to retain the undersigned attorney to represent her in these causes of action Plaintiff has agreed to pay her attorney reasonable attorney's fees for the preparation and trial of these causes, and further for any appeal thereof should same become necessary.

74.     Additionally, Plaintiff has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve her ability to earn a living. Accordingly, Plaintiff seeks all general, special, incidental, and consequential damages as shall be proven at trial.

75.     Further, Plaintiff seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendant. Plaintiff also seeks post-judgment interest at the maximum rate allowed by law in the event that Defendant do not promptly tender damages assessed against it and to avoid unjustly enriching Defendant.

## VII.
## PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff has judgment against Defendant for:

a. Permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant from engaging in any employment practice which discriminates on the basis of race and disability and retaliates for opposing same.

b. All damages to which Plaintiff may be entitled pursuant to this Complaint, or any amendment(s) thereto, including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity;

c. Compensatory damages for pain and mental suffering in the past and future;

d. Reasonable attorney's fees, with conditional awards in the event of appeal;

e. Pre-judgment interest at the highest rate permitted by law;

f. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

g. Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

h. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Complaint or by any amendment hereto.

Respectfully submitted,
Law Offices of Katrina Patrick

*/s/ **Katrina Patrick***

_____

**Katrina Patrick**
Attorney-in-Charge
State Bar No. 00797218
Federal Bar No. 22038
6575 West Loop South, Suite 500
Bellaire, Texas  77401
Telephone:  (713) 796-8218

**ATTORNEY FOR PLAINTIFF**
Angela D. Douglas

-13-